Dear Mr. Conner:
This office is in receipt of your request for an opinion of the Attorney General in regard to issues resulting from the fire that totally destroyed the Plaquemines Parish Courthouse which housed the offices of two District Court Judges, the District Attorney, the Assessor, the Clerk of Court, the Sheriff, the Council, the Indigent Defender Board and Court Rooms for Divisions "A" and "B". You indicate Parish President declared an emergency under his power in R.S. 29:722, and the Parish Council passed an Ordinance declaring an emergency to expedite appropriations and to alleviate the requirement of Section 6 in regard to procedure, and was limited to issues pertaining to the Courthouse and related matters. Since then temporary space for almost all of the agencies affected have been made. The Parish Council is planning to place the issue of a new Courthouse on the October 5, 2002 general election, and will ask to move the parish seat if there is a new location of the Courthouse. It will take three or four years to build a new Courthouse once approval is obtained. Currently the Parish Council is holding meetings at different public buildings through out the Parish. Pursuant to these events you' set forth the following questions:
 1. Can the Declarations of Emergency by the Parish President and the Parish Council stay in existence until a new Courthouse can be built?
 2. Can the Parish Council continue to hold its meetings at any public building in the Parish until a new courthouse can be built or does it have to meet at least once a month at the parish seat as required by the Charter if there is a public building available at that location;
 3. Can the Parish Council wait until October 5, 2002 general election to place the courthouse issue on the ballot, or does it have to hold a special election before then, and can the Parish wait for the public to be given the option to decide whether or not a new Courthouse should be constructed elsewhere, or is the Council required to begin immediate construction on a new Courthouse;
 4. Inasmuch as there are three temporary Courthouses in use by the District Court Judges with the judge rotating Court throughout the Parish, must one of the temporary courthouses be designated as the official place for Sheriff Tax Sales by the Judges or the Parish Council, and must it be located at the Parish Seat;
 5. If it does matter that the temporary Courthouses are not held at the Parish Seat, is the Council under a duty to hold a special election prior to October 5, 2002 to move the Parish Seat either temporarily or permanently to match the location of the designated "Courthouse"?
We find the provisions of R.S. 33:4715.2 (Act 446 of 1998 1st. Ex. Sess) creating the Plaquemines Parish Courthouse District, are pertinent to your inquiry. The District, which is coterminous with the parish, is a political subdivision of the state, and the purpose as set forth in Subsection A is "to acquire or construct a new courthouse or renovate the existing courthouse and to maintain and operate the courthouse, including all matters relating to incurring debt and financing such activities as approved by the voters * * *." The District consists of nine members being, the district attorney for the 25th Judicial District Court, the sheriff of Plaquemines Parish, the Parish tax assessor, the clerk of the 25th Judicial District Court, the Plaquemines Parish President, the chairman of the Parish council, the Judges of Divisions A and B, or the designees of these offices, and the Parish Council shall appoint one member.
Among the numerous powers and duties set forth in Subsection C is Paragraph (8) providing as follows:
 To enter into agreements with any person, corporations, associations, or other entities, including public corporations, political subdivisions, the United States government, and agencies thereof, the state of Louisiana or any of its agencies, or any combination thereof for the operation or use of properties and facilities of the district.
Additionally in Paragraph (11) it sets forth in part that the District shall have the power "to govern, manage, and direct the existing courthouse, a new courthouse, or both and associated facilities; * * * to pass ordinances for the regulation and governance thereof; * * *".
In conclusion Paragraph (14) gives the district the power "to perform or have performed any other function or activity necessary for the achievement of the purpose of the district."
In Subsection D, Revenues, Paragraph (6) provides, "The district may, on its own initiative, call a special election to submit to the qualified electors of the district a proposition or propositions authorizing the levy of a tax or the issuance of bonds or both."
Finally, Subsection (E) provides as follows:
 The governing authority of the district shall exercise the authority granted in this Section to the extent that sufficient revenues are authorized by the voters of the district, and the parish governing authority shall not exercise any authority which conflicts with such exercise of authority by the district. To the extent that voters do not authorize the district to acquire sufficient revenues for the exercise of the authority granted in this Section, the parish governing authority may, as it deems appropriate, exercise its own authority, as otherwise provided by law, to provide for the acquisition, construction, renovation, operation, or maintenance of the parish courthouse.
It is our understanding that the voters did not authorize the district to acquire sufficient revenues for the exercise of authority granted in the Section. Therefore, the provision is significant that provides, "the parish governing authority may, as it deems appropriate, exercise its own authority to provide for the acquisition, construction, renovation, operation, or maintenance of the parish courthouse."
While R.S. 29:721 is entitled the Louisiana Emergency Assistance and Disaster Act and covers situations "of unprecedented size and destructiveness", it further states it applies to emergencies resulting from "fire". It is then provided in R.S. 29:727(F) that the parish president may suspend the provisions of any regulatory ordinance prescribing procedures for conduct of local business if it in any way would hinder necessary action in coping with the emergency, and utilize all available resources of the local government as reasonably necessary to cope with the local disaster. It would follow that coping with the disaster would have no time limit but would remain an emergency until the condition was corrected by construction of a new courthouse.
Although R.S. 29:727 permits the parish president to suspend provisions of "any regulatory ordinance prescribing procedures for conduct of local business, or the orders, rules or regulations of any local agency, if strict compliance with the provisions of any ordinance, order, rule or regulations would in any way prevent, hinder, or delay necessary action in coping with the emergency", the provision in question is in the Charter mandating that the Parish Council must meet at least once a month at the parish seat. It must be concluded the Charter provision until amended must be followed. We note that R.S. 33:1236(47) provides the parish governing authority has the power to open and maintain such offices and suboffices as may be required, but that "offices must be maintained at the parish seat." While, this office recognized in Atty. Gen. Op. 94-127 that the parish governing authority which operates under a home rule charter form of government may establish by ordinance the location of its governmental offices, the charter mandate of meeting at the parish seat is a matter beyond simply establishing a government office.
It would appear wherein R.S. 33:4715.2(E) sets forth that the parish governing authority "may, as it deems appropriate" provide for the construction of the parish courthouse, it can wait to call an election on the courthouse issue . . . We find nothing that mandates the Parish Council hold a special election to settle the issue.
The place to hold the Sheriff's tax sale is set forth in R.S. 47:2181 to be "at the principal front door of the courthouse in which the civil district court of said parish is held". The main concept of this statute is that the tax collector must advertise the tax sale. However, under the present situation it must be concluded this can be at any one of the temporary courthouses in use inasmuch as wherein R.S. 47:2181 mandates he "shall proceed to advertise for sale the consolidated delinquent tax list", it further provides that the form for the advertisement be "substantially" as that then set forth. We must conclude a variance can be made in the advertisement of the sale as to the location when so mandated by the situation as in the instant case, and the location will be that temporary courthouse described in the sheriff's advertisement. Finding nothing that mandates who makes this determination, it would logically follow the decision can be made by the Sheriff who is mandated by law to conduct the sale.
In regard to your question whether the Council is under a duty to hold an election prior to October 5, 2002 to move the Parish Seat to match the location of the designated "Courthouse", it would not appear this would be necessary inasmuch as the designated "courthouse" is temporary and being held in different locations in the parish since, if we understand correctly, no one place at the parish seat can accommodate the divisions of the parish court. Moreover, this office has observed that the parish seat cannot be moved until suitable facilities are available at the new location for the parish officials to conduct the affairs of the parish. Atty. Gen. Op. Nos. 96-325, 91-197.
We hope this sufficiently answers your inquiries inasmuch as we recognize they are based upon a unique situation.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
Date Released: May 30, 2002